# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

In re:                                              Bankruptcy No. 05-32471

Duane Eddie Osland,

        Debtor.

_____

Julie Schomburg-Osland,

        Appellant,

     v.                                        **MEMORANDUM OPINION
                                                      AND ORDER**
                                                      Civil No. 05-2440 ADM

Duane Eddie Osland,

        Appellee.

_____

Kurt M. Anderson, Esq., Minneapolis, MN, on behalf of Appellant.

Paul W. Bucher, Esq., Dunlap & Seeger, P.A., Rochester, MN, on behalf of Appellee.

_____

## I.  INTRODUCTION

This matter is before the undersigned United States District Judge on Appellant Julie
Schomburg-Osland's ("Appellant") Appeal [Docket No. 1] of a September 8, 2005 Order issued
by the Honorable Gregory F. Kishel, United States Bankruptcy Judge for the District of
Minnesota.  Judge Kishel allowed Appellee Duane Eddie Osland's ("Appellee") homestead
exemption and Appellant's objection to the homestead exemption was denied.  For the reasons
set forth below, Appellant's appeal is denied.

## II.  BACKGROUND

Appellant and Appellee were married on May 22, 1993, and their marriage was dissolved
by the Iowa District Court for Clayton County in a decree of March 31, 2003 issued by Judge

James L. Beeghly after a contested trial.  Appellant's App. [Docket No. 5] at 160.  On July 22,

2003, Appellee filed a petition for modification of the decree, and Appellant later answered and

filed a counterclaim for modification of the decree.  Id. at 161.  While the petition for

modification was pending, on January 11, 2005, Judge John Bauercamper of the Iowa District

Court for Clayton County issued an order for a temporary writ of injunction, enjoining Appellee

"from selling, transferring, dissipating, or otherwise encumbering any personal assets, including

tax overpayments or tax refunds, prior to the hearing scheduled in this case on February 10,

2005."  Id. at 57.  On February 16, 2005, Judge Bauercamper extended the effect of the

temporary writ of injunction "until the court has filed its written decision on the pending action

for modification of decree of dissolution of marriage and pending contempt application."  Id. at

58.  Nonetheless, Appellee obtained a second mortgage on his home on February 23, 2005, in the

amount of $39,426.  Id. at 24.

Appellee insists that the second mortgage on his home in the amount of $39,426 was

necessary to provide the money to his closely held corporation, Certifying Service Express, Inc.

("CSE"), of which he is the owner and majority shareholder.  Without the funds of the second

mortgage, CSE allegedly lacked sufficient funds to meet its payroll obligations on March 8,

2005.  Id. at 62-67.  In an order dated August 27, 2005, Judge Bauercamper wrote:

> The respondent [Appellee] has never accepted the decisions of the court contained in the
> Decree of Dissolution of Marriage issued in 2003 by Judge James L. Beeghly.  His
> actions disclose that he has been consistently acting pursuant to a plan or scheme to
> dissipate, manipulate and shelter his assets to frustrate his ex-wife's efforts to enforce the
> economic provisions of the decree of dissolution of marriage, all of which he considers
> unjust.

Id. at 172.  Further: "The respondent's [Appellee] conduct in violation of the temporary writ of

injunction was not justified or excused, because he had ample notice of the injunction.  He

2

knowingly chose to disregard the order.  Therefore, his conduct is willful and constitutes [ ] an additional contempt."  <u>Id.</u> at 172.[1]

On April 15, 2005, Appellee filed for bankruptcy under Chapter 13.  <u>Id.</u> at 14.  His Chapter 13 case was converted to a Chapter 7 case on May 16, 2005.  <u>Id.</u>  Pursuant to Minn. Stat. § 510.01, Appellee claimed a $200,000 homestead exemption for a home valued at $275,000.  <u>Id.</u> at 22.  Appellee also listed two mortgages on his home on "Schedule D - Creditors Holding Secured Claims."  <u>Id.</u> at 24.  Both mortgages are held by Merchants Bank NA in La Crescent, Minnesota.  <u>Id.</u>  The first mortgage is valued at $34,119 and the second mortgage is valued at $39,426.  <u>Id.</u>

On July 29, 2005, Appellant filed a motion objecting to Appellee's claimed homestead exemption "to the extent that he encumbered any exempt or non-exempt portion of the property's value after January 11, 2005."  <u>Id.</u> at 54.  Appellee responded that the second mortgage was to secure funds for CSE to make its payroll obligations, and so to the extent that he violated the Iowa District Court's orders, "there was good reason to do so and that in any event, those are matters to be dealt with by the state courts of Iowa and not the United States Bankruptcy Court."  <u>Id.</u> at 114.  Appellee also submitted an affidavit by Donna Marcel, CSE's bookkeeper, stating that in her opinion, the money transferred to CSE was necessary for CSE to meet its current expenses.  <u>Id.</u> at 128.

---

[1] Appellee also violated the temporary writ of injunction by settling a lawsuit with his former business partner and minority shareholder in CSE on February 10, 2005.  <u>Id.</u> at 170.  Appellee was found in contempt of court by Judge Bauercamper four times for different reasons each time.  Appellee argues that the Iowa court's contempt orders and order regarding petition for modification are not properly before this Court because Appellant's reply memorandum of law, to which the Iowa court's orders were attached, filed with the bankruptcy court, was not authorized or timely filed.  The Court addresses Appellee's contentions below.

Judge Kishel heard oral argument on Appellant's objection on September 6, 2005, and overruled her objection after finding that Appellant did not allege sufficient facts to establish that Appellee's second mortgage was obtained with intent to defraud creditors under the Minnesota Supreme Court's decision in In re Tveten, 402 N.W.2d 551 (Minn. 1987). Id. at 214-217. Judge Kishel also observed that the Trustee had not joined in Appellant's objection, and that Appellee had provided unrebutted evidence that the mortgage was necessary to keep CSE operational. Id. Appellant now appeals Judge Kishel's order.

### III.  DISCUSSION

The standard of review in a bankruptcy appeal differs for questions of law and questions of fact.  Questions of law are reviewed *de novo*, while findings of fact are reviewed on a clearly erroneous standard.  In re Muncreif, 900 F.2d 1220, 1224 (8th Cir. 1990).

### A.      Reply Memorandum of Law

As an initial matter, Appellee argues that Appellant's reply memorandum of law filed with the bankruptcy court on September 2, 2005, was not part of the record below and is not part of the record on appeal.  Appellee argues that the reply memorandum was not timely filed and improperly included additional documentation, including the Iowa court's findings of fact and conclusions of law on the divorce decree modification petition and two separate contempt orders. In response, Appellant asserts that the reply brief was timely filed and Appellee's counsel misread the timestamp on the reply papers.  Appellant also asserts that the reply was authorized pursuant to Minnesota Local Bankruptcy Rule 9006-1(c).

The Court is satisfied that the reply was timely served.  The deadline for filing the reply was September 2, 2005, at 2:30 pm Central Daylight Time ("CDT").  The reply was faxed and

emailed via a service that timestamps the documents in Greenwich Mean Time, which is five

hours ahead of CDT.  At least one of the fax transmissions was transmitted at 19:01:06 GMT, or

7:01 pm GMT, which is 2:01 pm CDT, just in advance of the 2:30 pm CDT deadline.  Appellant

Reply Br. [Docket No. 7] at 10-11, 16.

        The Court is also satisfied that the reply was authorized pursuant to Minnesota Local

Bankruptcy Rule 9006-1(c), which states:

> REPLY PAPERS.  No reply papers to the responsive papers need be served and filed.  If
> the moving papers are delivered and filed later than fourteen days before the hearing
> date, no reply papers to the responsive papers may be served and filed.  If the moving
> papers are served and filed fourteen or more days before the hearing, any reply papers
> may be delivered and filed not later than twenty-four hours before the time set for the
> hearing or mailed and filed not later than three days before the hearing date.

Appellant's initial motion objecting to the homestead exemption was filed on July 29, 2005.

Appellee filed his response to the motion on August 17, 2005.  The hearing on the objection

motion was initially scheduled for August 22, 2005, but was subsequently rescheduled for

September 6, 2005.  In the intervening time, the Iowa court filed its order regarding the petition

for modification as well as two contempt orders.  See Br. of Appellee [Docket No. 6] at 2 n.2.

Appellant's initial motion was filed more than fourteen days before the initial hearing date,

allowing for reply papers.  Subsequently, her reply memorandum was filed within the allowable

time before the hearing and included the Iowa court's orders as attachments.

        Although Appellee objected to the inclusion of the reply memorandum and its

attachments in the record at the hearing before Judge Kishel, the record does not show Judge

Kishel struck Appellant's reply memorandum and its attachments.  It is also unclear from the

record whether Judge Kishel relied on Appellant's reply memorandum of law and its attachments

in rendering his decision.  In addition, Appellee had an opportunity to address the substance of

the reply memorandum and its attachments before Judge Kishel and in his briefing papers before this Court.  Even if the reply memorandum and its attachments are properly in the record and are considered by this Court, their inclusion does not change the Court's analysis of this appeal.

**B.    Objection to Homestead Exemption**

Appellant asks this Court to: 1) find that Appellee's second mortgage violated the Iowa court's injunction against encumbering personal assets, 2) find that the violation of the injunction constituted a fraud against Appellant, or was so repugnant as to require a partial disallowance of Appellee's homestead exception, and 3) remedy the fraud by reducing the amount that Appellee can claim under the homestead exception to $160,574, thereby making $39,426 non-exempt assets available to the bankruptcy court.  Appellee responds that Judge Kishel's finding of insufficient evidence to establish fraudulent intent was not clearly erroneous. Appellee also states that: 1) he is not collaterally estopped from raising defenses or justifications relative to the Iowa court's orders, 2) an alleged violation of a state court order is not, by itself, a fraud on creditors, and 3) if a state court order has been violated, the state court should impose the remedy.

11 U.S.C. § 522(b)(2) allows a debtor to exempt property pursuant to provisions of state law.  Minn. Stat. § 510.01 states:

> The house owned and occupied by a debtor as the debtor's dwelling place, together with the land upon which it is situated to the amount of area and value hereinafter limited and defined, shall constitute the homestead of such debtor and the debtor's family, and be exempt from seizure or sale under legal process on account of any debt not lawfully charged thereon in writing . . . .

Minn. Stat. § 510.02 limits the amount of the homestead exemption to $200,000.  Although not entirely on point, the case most analogous to the case at bar is Sholdan v. Dietz, 217 F.3d 1006

(8th Cir. 2000).  In <u>Sholdan</u>, a ninety-year-old retired farmer with limited income living in an assisted care facility suddenly radically altered his lifestyle by liquidating his assets and purchasing a $135,000 house with yearly property taxes greatly exceeding his annual income. <u>Id.</u> at 1010.  After filing for bankruptcy, the bankruptcy trustee objected to Sholdan's claimed homestead exemption on the grounds that the home was acquired in specific contemplation of filing for bankruptcy and with the intent to defraud creditors.  <u>Id.</u> at 1008.

The Eighth Circuit, in affirming the district court's affirmance of the bankruptcy court's order sustaining the bankruptcy trustee's objection, noted the well settled rule that "mere conversion of non-exempt assets to exempt assets is not in itself fraudulent."  <u>Id.</u> at 1010.  A debtor may not, however, claim the homestead exemption when non-exempt property is converted to exempt property with the "intent to defraud."  <u>Id.</u> at 1008.  "Before actual fraudulent intent can be found, there must appear in evidence some facts or circumstances which are extrinsic to the mere facts of conversion of non-exempt assets into exempt and which are indicative of such fraudulent purpose."  <u>Id.</u> at 1010.  Direct evidence of fraudulent intent is rare, and therefore, intent to defraud can be inferred by referring to the "badges of fraud" listed in the Uniform Fraudulent Transfer Act ("UFTA") and any other relevant circumstantial factors bearing upon the issue of fraudulent intent.  <u>Id.</u> at 1009-10.  "The question of whether an individual acted with intent to defraud in converting non-exempt property into exempt property is a question of fact, on which the bankruptcy court's finding will not be reversed unless clearly erroneous."  <u>Id.</u> at 1010.

Even if Appellee did encumber the non-exempt portion of the equity in his homestead in violation of the Iowa court's order, his actions do not automatically give rise to a finding of

7

intent to defraud his creditors in the context of this bankruptcy proceeding.  In the context of the

bankruptcy proceeding, Appellee's encumbrance of non-exempt assets does not by itself

evidence fraud; Appellant must present additional facts that demonstrate fraudulent intent.

While Appellant has presented evidence of the Iowa court proceedings and Judge Bauercamper's

determination that Appellee has consistently acted "pursuant to a plan or scheme to dissipate,

manipulate and shelter his assets to frustrate his ex-wife's efforts to enforce the economic

provisions of the decree of dissolution of marriage," Appellee has presented evidence that the

second mortgage on his home was necessary to allow CSE sufficient funds to meet its payroll

obligations.[2]  Judge Kishel's factual determination that Appellant did not allege sufficient facts

to make a prima facie case of intent to defraud, "even viewed in conjunction with and against the

backdrop of the Iowa [s]tate order," was not clearly erroneous and therefore will not be disturbed

by this Court.  Appellant's App. at 216.  While the Court can understand Appellant's frustration

in attempting to collect and preserve her property settlement, she has not presented a cognizable

legal theory to this Court to support the relief requested.

---

[2] In the long term, the continued viability of CSE is likely to work to Appellant's benefit.

8

## IV.  CONCLUSION

Based on the foregoing, and all the files, records and proceedings herein, **IT IS**

**HEREBY ORDERED** that:

1.  Appellant's Appeal [Docket No. 1] is **DENIED**;

2.  The Bankruptcy Court's Order of September 8, 2005 is **AFFIRMED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY**.

BY THE COURT:

s/Ann D. Montgomery
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated:  March 1, 2006.